**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| S.L. *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 8:07-cv-02405-AW |
| JERRY D. WEAST *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff, S.L., a minor child, by parents and next friends, Thomas Lorenzen and Laura

Lorenzen, brings this action against Defendants Jerry D. Weast and Montgomery County Board

of Education. Plaintiffs seek declaratory and injunctive relief for alleged violations of the

Individuals with Disabilities Education Act (IDEA). Pending before the Court are the following

motions: (1) Plaintiffs' Motion for Summary Judgment; (2) Defendants' Cross-Motion for

Summary Judgment; and (3) Plaintiffs' Motion to Strike Supplemental Affidavit or, in the

Alternative, for Leave to Submit a Surreply. The Court has reviewed the record and deems no

hearing necessary. For the following reasons, the Court **DENIES** Plaintiffs' Motion for

Summary Judgment, (2) **DENIES** Defendants' Cross-Motion for Summary Judgment, and (3)

**GRANTS IN PART** Plaintiffs' Motion to Strike.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This case was first filed on September 11, 2007. Doc. No. 1. On March 31, 2009 the

Court issued a Memorandum Opinion and Order in which it granted a motion for summary

judgment filed by Plaintiffs (Lorenzens). Doc. Nos. 23–24. Defendants appealed and, on

December 7, 2010, the Fourth Circuit issued an opinion vacating this Court's grant of summary

judgment in favor of the Lorenzens and remanding for further proceedings. The Fourth Circuit's

opinion clearly and concisely sets forth the essential facts and procedural history of the case; the

Court excerpts the vast bulk of the ensuing factual recitation therefrom.

S.L. is an autistic student who is eligible for special education services under the IDEA.

Pursuant to the IDEA, Defendants (MCPS) prepared an Individualized Education Program (IEP)

dated July 18, 2006 for S.L. for the 2006-2007 school year. MCPS subsequently drafted a second

IEP for S.L. dated November 14, 2006. This second IEP amended the earlier IEP to include

occupational therapy and physical therapy goals and objectives for S.L., but both IEPs proposed

placing S.L. at the Learning Center at Strathmore Elementary School (Strathmore). The

Lorenzens objected to both IEPs and elected to enroll S.L. in Kingsbury Day School

(Kingsbury), a private special education school, for the 2006-2007 school year. On January 26,

2007, the Lorenzens filed a request for a due process hearing seeking tuition reimbursement for

the cost of enrolling S.L. in Kingsbury.

After a due process hearing, an Administrative Law Judge (ALJ) concluded that the July

18 IEP violated IDEA procedural requirements and denied S.L. a free appropriate public

education (FAPE) during the first semester of 2006. However, the ALJ also found that the

amended November 14 IEP was reasonably calculated to provide S.L. with a FAPE for the

remainder of the 2006-2007 school year. Therefore, the ALJ awarded the Lorenzens tuition

reimbursement for the first semester of the 2006-2007 school year, but declined to award tuition

reimbursement for the second semester.

On September 11, 2007, the Lorenzens filed this action in this Court seeking review of

the ALJ's decision, and both parties moved for summary judgment. In their supporting

memoranda, the Lorenzens asked this Court to consider "additional evidence" that was not a part

of the administrative record and that had not been considered by the ALJ. This

evidence is that on July 24, 2007, three months after the completion of the due process hearing,

the MCPS IEP team determined that Strathmore was no longer an appropriate

placement for S.L. The Lorenzens characterized the new placement in the July

24 IEP as a "striking reversal" of MCPS's previous litigation position regarding the

appropriateness of the Strathmore placement. According to the Lorenzens, the three different IEP

teams made their placement determinations based on the same information regarding S.L.'s

educational needs, but there had been no change in S.L.'s needs between November 2006 and

July 2007 that would account for the differences in the proposed IEPs. Thus, the Lorenzens

contended that the reversal by MCPS constituted an after-the-fact admission by MCPS that

Strathmore was not an appropriate placement for S.L. during the 2006-2007 school year.

Therefore, the Lorenzens argued, the November 14 IEP, which proposed that S.L. be placed at

Strathmore, could not have been reasonably calculated to provide S.L. with a FAPE during

the second semester of 2006-2007.

In response, MCPS filed a memorandum that included evidence in the form of a sworn

affidavit from Virginia Ross, a special education supervisor for MCPS. In her affidavit, Ross

stated, among other things, that she was a member of the IEP team that met on July 24, 2007;

that the team concluded S.L.'s special education needs had changed during the 2006-2007 school

year; and that the team determined S.L.'s needs could no longer be met at Strathmore for the

2007–2008 school year.

In light of what this Court regarded as MCPS's voluntary reversal of its position shortly

after the administrative hearing, this Court determined that the November 14 IEP was not

reasonably calculated to benefit S.L. educationally and therefore denied S.L. a FAPE. Accordingly, this Court granted summary judgment in favor of the Lorenzens and awarded them tuition reimbursement for both the first and second semesters of the 2006-2007 school year. MCPS appealed.

The Fourth Circuit vacated and remanded for further proceedings. The Fourth Circuit vacated this Court's Memorandum Opinion and Order for two primary reasons. First, the Fourth Circuit held that Ross's affidavit created a genuine issue of material fact respecting the reasons wherefore MCPS changed S.L.'s placement in July 2007. Second, the Fourth Circuit held that the Lorenzens failed to properly support with admissible evidence their assertion that S.L.'s needs had not changed from November 2006 to July 2007 and that the July 2007 decision to change S.L.'s placement thus threw into doubt the appropriateness of the Strathmore placement. Additionally, the Fourth Circuit stated that this Court clearly erred, if in fact it so found, when it determined that the new placement for 2007-2008 and Ross's affidavit were tantamount to "an admission" that the Strathmore placement for S.L. was improper.

On remand, the Parties stipulated to the admission of additional evidence and proposed a briefing schedule, which the Court approved. *See* Doc. Nos. 42–43. Pursuant to said briefing schedule, the Lorenzens moved for summary judgment on June 30, 2011. Doc. No. 44. In their Motion for Summary Judgment, the Lorenzens mounted a two-fisted attack. On the one hand, the Lorenzens urge the Court to use its equitable discretion to award them full tuition reimbursement for the 2006-2007 school year based on the undisputed deficiencies in the first semester IEP. Alternatively, the Lorenzens repeat the argument concerning which the Fourth Circuit has already determined that a genuine issue of material fact exists: that S.L.'s needs did not change

during the second semester of the 2006-2007 school year so as to justify the Strathmore placement.

On October 17, 2011, MCPS filed a dual Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment (Cross Summary Judgment Motion). Doc. No. 49. Therein, consistent with the Fourth Circuit's ruling, MCPS argues that the affidavits of Virginia Ross and Teri Bell create a genuine dispute of material fact regarding whether and/or the extent to which S.L.'s needs changed between November 2006 and July 2007. MCPS also attacks the Lorenzens' argument that the Court should exercise its equitable discretion to award them full tuition reimbursement for the 2006-2007 school year based on the undisputed deficiencies in the first semester IEP. Finally, MCPS insists that the Lorenzens based their Motion for Summary Judgment on a brand of "hindsight reasoning" that the Fourth Circuit repudiated in *Schaffer v. Weast*, 554 F.3d 470 (4th Cir. 2009).

On October 17, 2011, all in the same document, the Lorenzens responded in opposition to MCPS's Cross Summary Judgment Motion and replied in support of their Motion for Summary Judgment. Doc. No. 50. On November 11, 2011, MCPS replied in support of its Cross Summary Judgment Motion. Doc. No. 54. MCPS included with its reply the supplemental affidavit of Virginia Ross. Doc. No. 54-1. Shortly thereafter, the Lorenzens filed a Motion to Strike Supplemental Affidavit or, in the Alternative, for Leave to Submit a Surreply (Motion to Strike). Doc. No. 55. In their Motion to Strike, the Lorenzens argue that the supplemental affidavit was untimely and that its inclusion with a reply brief unfairly deprived them of an opportunity to respond to the new assertions that Ross makes therein. Alternatively, the Lorenzens ask the Court to grant them leave to file a surreply. In support of this request, the Lorenzens attach their proposed surreply as an exhibit to their Motion to Strike. Doc. No. 55-1. In its response to the

Lorenzens' Motion to Strike, MCPS contends that Ross's supplemental affidavit does no more than to hammer home points that it had made in former filings and, hence, the Lorenzens had a fair chance to respond thereto.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot

support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n,*

*Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III.     LEGAL ANALYSIS

### A.     Motion to Strike

The Court summarily grants in part the Lorenzens' Motion to Strike. The Lorenzens' ask

the Court to consider their surreply as an alternative to striking Ross's supplemental affidavit.

The Court chooses to do this rather than to strike said affidavit. This makes sense because, as

MCPS correctly notes, it has already raised at least some of the points Ross makes in the

supplemental affidavit. Moreover, as the ensuing analysis evinces, genuine issues of material fact

precluding summary judgment exist. Thus, striking the affidavit would amount to an exercise in

vanity insofar as the averments Ross makes therein constitute facts about which she will be able

to testify at trial. Accordingly, the Court grants in part the Lorenzens' Motion to Strike and, as a

result, the Court accepts as filed the Lorenzens' surreply.

### B.     Cross-Motions for Summary Judgment

> *1.     Whether and/or to what extent S.L.'s needs changed from November 2006 to July 2007*

The Parties devote large portions of their cross-motions for summary judgment to the

question whether and/or to what extent S.L.'s needs changed during the relevant time period.[1]

The Lorenzens' basic position is that S.L.'s needs did not change sufficiently to warrant placing

her in the less restrictive environment of Strathmore. MCPS counters that S.L.'s needs did

change and, hence, it had an adequate basis for its placement recommendation. It is unclear why

---

[1] The Court assumes for the sake of deciding the instant motions that the approximately eight-month period spanning from July 2006 to November 2007 is the applicable time period. The Parties seem to dispute this fact as well. The Court declines to broach the topic inasmuch as it is immaterial to the Court's analysis. In other words, summary judgment for either party would be improper even if the time period were ten months as MCPS seems to assert.

the Parties have dedicated so much time, space, and energy bickering over an issue concerning

which the Fourth Circuit has held that a genuine dispute precluding summary judgment exists.

The Fourth Circuit has unequivocally held that the first affidavit of Ross, *in and of itself*, created

a genuine dispute of material fact. At this later juncture, Ross has submitted two extra affidavits

that explain in considerably greater detail the reasons wherefore MCPS chose to change S.L.'s

placement. Moreover, MCPS includes additional admissible evidence to buttress the declarations

of its key witnesses. Concededly, the Lorenzens vigorously contest that S.L.'s needs changed in

the relevant time frame and submit admissible evidence to bolster these contentions. Yet, in so

arguing, the Lorenzens seem to misapprehend courts' role on summary judgment. At this stage,

it is well-established that courts refrain from resolving disputed facts. Rather, courts examine the

admissible evidence each side has to offer and asks itself whether a reasonable fact-finder,

viewing the evidence through a lens that favors the nonmoving party, could rule in his or her

favor. Here, as the Fourth Circuit has clearly indicated, a reasonable fact-finder could find in

either party's favor. Thus, a genuine dispute of material fact exists regarding whether and/or the

extent to which S.L.'s needs changed from November 2006 to July 2007. Accordingly, for the

additional reasons stated below, the Court must deny the Parties' cross summary judgment

motions.

> 2.      *Whether the Court should use its equitable discretion to award the Lorenzens full tuition reimbursement for the 2006-2007 school year based on the undisputed deficiencies in the first semester IEP*

The Court declines to use its "equitable discretion" in the way the Lorenzens request. The

Lorenzens assert that the Court need not decide whether and/or to what extent S.L.'s needs

changed to award it tuition reimbursement for the second half of the 2006-2007 school year. In

their view, even if the Court assumes that MCPS's decision to place S.L in Strathmore for the

second semester of 2006-2007 was proper, they would still be entitled to tuition reimbursement despite objecting to this placement and enrolling S.L. in Kingsbury. The Lorenzens observe that MCPS decided in July 2007 that Strathmore was no longer an appropriate placement for S.L and, instead, recommended the "far more restrictive" placement of Carl Sandburg. Therefore, in the Lorenzens' estimation, S.L. would have had to attend three different schools for three consecutive semesters had they placed her in Strathmore in the second semester of 2006-2007. That is, the Lorenzens maintain that their placement of S.L. in Kingsbury for the second semester was necessary to prevent the unfair result of her having to attend three different schools for three semesters in a row. Accordingly, in the name of equity, the Lorenzens urge this Court to order MCPS to reimburse them for tuition for the second half of the 2006-2007 school year.

The Court disagrees with this argument for three primary reasons. First, the Lorenzens have identified no controlling authority to support it. Instead, they rely exclusively on Judge Messitte's opinion in *Kitchelt v. Weast*, 341 F. Supp.2d 553 (D. Md. 2004). The Court will turn to the relevance of *Kitchelt* in a moment. For the time being, the Court observes that the *Kitchelt* court relied on two Supreme Court decisions for the proposition that courts have equitable discretion under the IDEA to reimburse parents for decisions to place disabled students in private schools where: (1) the parents place the child in a private school based on the belief that the IEP does not offer the child a FAPE; (2) the ALJ determines that the IEP does in fact offer the child a FAPE; and (3) the district judge affirms the ALJ's determination. *See Kitchelt*, 341 F. Supp.2d at 555 (citing *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985)).

At first blush, these cases fail to support this proposition. In *Burlington*, the Supreme Court held that the IDEA authorizes courts to issue injunctions directing school districts to

"develop and implement at public expense an IEP placing the child in a private school" "[i]n a case where a court determines that a private placement desired by the parents was proper under the Act and that an IEP calling for placement in a public school was inappropriate." *Burlington*, 471 U.S. at 370. *Carter*, for its part, repeats this theme. *See Carter*, 510 U.S. at 15–16 (holding that a court has broad discretion in granting the relief it deems appropriate where it holds that a public placement violates the IDEA).

In this case, by contrast, this Court did not hold that the November 2006 IEP proposing the Strathmore placement was inappropriate. Quite the contrary, in its prior Memorandum Opinion, this Court indicated that it would not disturb the ALJ's determination that, based on the evidence before it, the November 2006 IEP offered S.L. a FAPE. Indeed, this Court based its decision to upset the ALJ's determination on the "additional evidence" that MCPS voluntarily reversed its position through the July 2007 IEP in which it determined that Carl Sandburg was an appropriate placement for S.L. In these circumstances, it is unclear to the Court that, under the IDEA, it possesses "equitable discretion" of the type the Lorenzens posit.

The Court also rejects the Lorenzens' equitable argument because Judge Messitte's (nonbinding) opinion in *Kitchelt* actually undercuts their argument they are entitled to reimbursement for the second semester of the 2006-2007 school year based on equitable grounds. The *Kitchelt* court held that the plaintiffs were entitled to reimbursement for half a year's tuition at a private school in the following circumstances: (1) an untimely yet otherwise valid IEP compelled the student's parents to enroll the student in private school as his parents awaited the school district's completion of the IEP process; and (2) transferring, *on the date of the belated IEP*, the child to the school that the IEP determined to be an appropriate placement "would have made three schools from him in four months." *See* 341 F. Supp. 2d at 557–58.

In this case, this Court affirmed the ALJ's determination that the IDEA entitled the Lorenzens to leave S.L. at Kingsbury for the first semester of the 2006-2007 school year. MCPS does not challenge this aspect of the Court's prior Memorandum Opinion and Order. Therefore, MCPS presently argues that the Lorenzens should have placed S.L. in Strathmore for the second half of the 2006-2007 school year. Had this happened, it would have meant three different schools for S.L. for three consecutive semesters, which is approximately fifteen months.[2] The four months about which the *Kitchelt* court expressed concern pale in comparison to this time span. Indeed, in holding that the parents were entitled to tuition reimbursement for one-half a school year, the *Kitchelt* court necessarily contemplated that, in some cases, it would be appropriate for a child to transfer from one school to another in the middle of a school year. *Kitchelt* then is inapposite.

Another flaw in the Lorenzens' discretionary equitable reimbursement argument is that it presumes that sending a child to three different schools for three consecutive semesters is per se harmful. This presumption is overbroad. Although it is plausible that such a change could cause disruption in the child's life, it is equally plausible that it could do the child a world of good. Whether the outcome is positive, negative, or somewhere in between will depend on numerous factors, not the least of which is the quality of the IEP and how accurately it assesses the child's needs. In cases where the IEP is sound, all else equal, such mid-year transfers promise to help, not hinder, the child. Moreover, the policy ramifications of adopting a rule that mid-year transfers are invariably inequitable concern the Court. This approach could discourage school officials from reassessing children's needs and recommending necessary transfers lest their guardians contend that such transfers are overly disruptive. Although this case involves a third

---

[2] School at Kingsbury presumably ended for the 2005-2006 school year in June 2006. School at Carl Sandburg presumably did not start for the 2007-2008 school year until August/September 2007.

school, the prospect of attending three schools in a year- to two-year period figures to present itself in many cases. *Cf. Kitchelt*, *supra*. For these reasons, the Court turns down the Lorenzens' invitation to order MCPS to reimburse them for the second-half of the 2006-2007 school year based on equitable discretion of the type they postulate.

    3.   *Whether the Lorenzens improperly based their Motion for Summary Judgment on "hindsight reasoning"*

  The Court already addressed, and rejected, this argument in its prior Memorandum Opinion. In coming to this conclusion, the Court noted that the IDEA mandates that "the court . . . **shall** hear addition evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii)(emphasis added). The Court further wrote that "while 'judicial review of IEPs under the IDEA is meant to be largely prospective and to focus on a child's needs looking forward . . . judicial review does look backward to some extent, so evidence arising after an administrative hearing might bear on the suitability of an earlier IEP without turning the process into an overly retrospective one.'" Doc. No. 23 at 13 (quoting *Schaffer*, 554 F.3d at 478). The Court examined the timeline of the case and ascertained that the decision to place S.L. in Carl Sandburg occurred in July 2007. Considering that this date falls approximately eight months after the November 2006 IEP, the Court determined that this development constituted "additional evidence" that bore on the propriety of the ALJ's determination. The Fourth Circuit was aware of this aspect of the Court's decision and did not reverse on this ground. Thus, the fact that the July 2007 IEP constitutes hindsight evidence does not entitle MCPS to summary judgment. Rather, the appropriate course of action is for the fact-finder to hear the evidence regarding the change *vel non* in S.L.'s needs, resolve the abounding factual disputes, and determine the relevance of the Carl Sandburg placement. In short, the Lorenzens did not, *as a matter of law*, impermissibly base their Motion for Summary Judgment on retrospective reasoning.

***

The foregoing analysis shows that there are genuine disputes of material fact regarding, inter alia, whether and/or to what extent S.L.'s needs changed from November 2006 to July 2007. Accordingly, the Court denies the Parties' cross-motions for summary judgment. As a result:

• The Court will schedule the case for a bench trial on Plaintiffs' remaining IDEA claim;

• The Court precludes the Lorenzens from arguing that the Court should use its equitable discretion to award them full tuition reimbursement for the 2006-2007 school year based on the undisputed deficiencies in the first semester IEP;

• The Court permits, however, the Lorenzens to argue that the MCPS's decision to change its recommended placement for S.L. from Strathmore to Carl Sandburg demonstrates that the ALJ's decision to award them a half-year's tuition, as opposed to a full-year's, was erroneous.

## IV.  CONCLUSION

For the foregoing reasons, the Court (1) **DENIES** the Parties' Cross-Motions for Summary Judgment and (2) **GRANTS IN PART** the Lorenzens' Motion to Strike. A separate Order follows.

March 21, 2012
Date

/s/
Alexander Williams, Jr.
United States District Judge